**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| NANCY CHEAIRS,<br><br>    Plaintiff,<br><br>v.<br><br>MARK THOMAS, LISA THOMAS FOX,<br>*as Executor of the Estate of Helen Thomas,*<br>*as Successor Trustee of Helen T. Thomas*<br>*Living Revocable Trust, and as Successor*<br>*Trustee of the John E. Thomas Residuary*<br>*Trust,* and JOHN DOE,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>No. 2:20-cv-2494-SHL-tmp |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LISA
THOMAS FOX'S MOTION FOR SUMMARY JUDGMENT**

This case involves the alleged forgery of a local, Memphis-based artist's work and an allegation that a mother and son participated in a scheme to distribute and benefit from the forgeries. Before the Court is Defendant Lisa Thomas Fox's Motion for Summary Judgment, (ECF No. 260), Plaintiff Nancy Cheairs' Response, (ECF No. 277), and Defendant's Reply, (ECF No. 278). Defendant seeks summary judgment, asserting that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law on each of Plaintiff's claims. (ECF No. 260-1 at PageID 1711.) In the alternative, Defendant argues that Plaintiff's state law claims are preempted by federal law and should be dismissed. (Id. at PageID 1717.)

Because there are genuine issues of material fact underlying Plaintiff's claims under the Copyright Act and Visual Artists Rights Act ("VARA"), Defendant's Motion is **DENIED** as to both. Defendant's Motion is also **DENIED** as to Plaintiff's fraudulent transfer claim because the Court previously ruled on this claim. (See ECF No. 281 at PageID 2281.) However,

Defendant's Motion is **GRANTED** as to Plaintiff's remaining state-law claims because the Copyright Act preempts these claims. Defendant's Motion is also **GRANTED** as to Plaintiff's Racketeer Influenced Corrupt Organization Act ("RICO") claim, as explained below.

## FACTUAL BACKGROUND[1]

Cheairs initially filed suit against only Mark Thomas and an unknown "John Doe," alleging that Thomas sold a number of forgeries of her works in cooperation with John Doe, who assisted him in locating original, authentic works by Cheairs that were then used to create forgeries. (ECF No. 1 at PageID 4.) On August 5, 2021, Cheairs joined Helen Thomas as a Defendant, alleging that she participated in her son's forgery scheme. (ECF No. 116 at PageID 720-21.) According to Cheairs, Helen Thomas participated in the forgery scheme in exchange for a share of the proceeds from the sale of the forgeries. (Id.)

As conceded by Helen Thomas, Mark Thomas used his mother's residence at 4628 Peppertree Lane in Memphis, Tennessee to store unauthorized artwork and meet with prospective clients. (ECF No. 260-1 at PageID 1713.) Helen Thomas acknowledged that her son stored many paintings in various places in her home, including the living room and garage. (ECF No. 266-1 at PageID 2038.) She was aware that her son was selling art at the residence. (Id.) She did not know of any other means by which Mark Thomas was earning money aside from art sales. (Id. at PageID 1964.)

At the same time as these sales, Helen Thomas deposited checks of $10,000 and $2,875 that were made out to Mark Thomas, but that he had endorsed to her. (ECF No. 277-1 at PageID 2228.) Cheairs argues that this money was from the proceeds from Mark Thomas' art sales,

---

[1] The Court only discusses the facts that are pertinent to Fox's Motion. The facts are taken from the Parties' filings. Any disputes of fact are noted.

whereas Fox contends that these checks were reimbursement for payments Helen Thomas made

for Mark. (ECF No. 266-1 at PageID 2008; ECF No. 276-1 at PageID 2190.)  In her deposition,

Helen Thomas asserted that she was not sure where the money came from, other than that

"[Mark] was always selling things."  (ECF No. 266-1 at PageID 2008.)

Helen Thomas also wrote a check for $5,200 to Memphis Professional Imaging ("MPI").

(ECF No. 266-1 at PageID 2013.)  According to Cheairs, Helen Thomas wrote this check to pay

MPI for the work it did for her son in creating the forgeries.  (ECF No. 277-1 at PageID 2222.)

However, Fox alleges that Helen Thomas wrote this check to make good on a bad check her son

had written to pay for printing services at MPI.  (ECF No. 279 at PageID 2249.)  Helen Thomas

also paid for a Penske rental truck that Mark Thomas used to transport paintings, as well as

advertisements that he ran in the Commercial Appeal to promote his business.  (ECF No. 266-1

at PageID 2027, 2029-32.)  The Parties dispute whether Mark Thomas used the rental truck to

move forged artwork.  (ECF No. 277-1 at PageID 2224; ECF No. 279 at PageID 2251.)

Cheairs identified two potential buyers that Mark Thomas met with at 4628 Peppertree

Lane—Haywood Henderson and Ginger Owings.  (ECF No. 260-1 at PageID 1713.)  In his

deposition, Henderson stated that he had initially turned down Mark Thomas' offer to view the

art collection due to high prices, but that Mark Thomas reached out to him some months later

offering a discount.  (ECF No. 272 at PageID 2129-30.)  Upon entering the house, Henderson

noted that there were paintings leaned up against the dining room table, some on the floor, and

many sculptural pieces in the living room.  (Id. at PageID 2132.)  He ultimately paid Mark

Thomas $5,000 for four Nancy Cheairs paintings. (Id.)  Mark Thomas also gave Henderson a

fifth piece for free for being a good customer.  (Id. at PageID 2135.)

In her deposition, Owings stated that there were paintings "everywhere" in the living room and garage.  (ECF No. 269 at PageID 2073.)  Owings also stated that she saw Helen Thomas at the house and that Thomas made the offhand remark "it's amazing the things you'll do for your children."  (Id.)  Owings claims she became suspicious upon noticing that Mark Thomas had identical Nancy Cheairs paintings in different sizes.  (Id. at PageID 2079.)  Owings did not purchase any paintings from Mark Thomas.  (Id.)  However, after meeting with him, she notified Cheairs of the encounter, which led to Cheairs' discovery of the alleged forgeries.  (ECF No. 198 at PageID 1236.)

## PROCEDURAL HISTORY

Cheairs added Helen Thomas as a Defendant in her Third Amended Complaint.  (ECF No. 116.)  In that Complaint, Cheairs alleges that Helen Thomas participated in her son's alleged forgery scheme by providing payments to MPI in exchange for proceeds from the sale of the disputed copies, providing other funds to further Mark Thomas' scheme, and allowing him to store the alleged forgeries and meet potential buyers in her home.  (Id. at PageID 720-21.)  Helen Thomas passed away in January 2022, and the Court granted Cheairs' Motion for Substitution of Parties, with Lisa Thomas Fox, the Executor of Helen Thomas' Estate, Successor Trustee of the Helen T. Thomas Revocable Living Trust, and Successor Trustee of the John E. Thomas Residuary Trust taking her place.  (ECF Nos. 169, 177.)

Cheairs filed her Fifth Amended Complaint on March 10, 2022.  (ECF No. 198.)  She alleges that Mark Thomas' reproduction and sale of her work constitutes violations of Sections 106 and 501 of the Copyright Act and VARA.  (Id. at PageID 1245.)  To that end, she requests the relief afforded by the Copyright Act and VARA, including but not limited to, impoundment, damages, statutory damages, and attorney's fees and costs.  (Id. at PageID 1245-47.)  Cheairs

also alleges a cause of action under RICO, 18 U.S.C. §§ 1961 et seq., (Id. at PageID 1254), and asserts various state law claims against Helen Thomas for her role in Mark Thomas' forgery scheme. (Id. at PageID 1249-257.) Lastly, she asserts a fraudulent transfer claim, alleging that Helen Thomas withheld an amended will and trust that shielded assets from judgment creditors, despite multiple court orders requiring that these documents be disclosed and shared with Cheairs as part of discovery. (ECF No. 220 at PageID 1416-17.)

## ANALYSIS

As explained below, because there are disputes of fact that would permit a jury to return a verdict for Cheairs on her Copyright Act and VARA claims, Fox is not entitled to summary judgment as to these claims. Additionally, Fox's argument that Cheairs cannot be awarded statutory damages or attorney's fees for copyright infringement is not supported by the law. As for Cheairs' state law claims, because the rights asserted in these state law claims are legally equivalent to the exclusive rights provided by the Copyright Act, the state law claims are preempted. Moreover, Cheairs fails to plead adequate facts, or support with evidence, the elements of a RICO claim. Lastly, the Court rejects Fox's argument that Cheairs' fraudulent transfer claim should be dismissed, given the previous ruling on this claim.

## I.   Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or argue that the moving party is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  The opposing party "cannot rest solely on the allegations made in [his] pleadings."  Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)).

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52).

## II.   Copyright Infringement

### A.  Helen Thomas' Liability

In her Fifth Amended Complaint, Cheairs alleges that Helen Thomas is liable for vicarious and contributory copyright infringement for her role in Mark Thomas' forgery scheme. (ECF No. 198 at PageID 1247-48.)  Fox seeks summary judgment, arguing that there is no evidence that Helen Thomas knew or participated in Mark Thomas' alleged acts, entitling her to

6

judgment as a matter of law.  However, given the existence of genuine issues of material fact, summary judgment is denied.

While the Copyright Act does not expressly impose liability for copyright infringement based on the acts of another, under certain circumstances, a defendant may be secondarily liable for another actor's infringement.  See Metro-Goldwyn-Mayer Studios v. Grokster, Ltd., 545 US 913, 930-31 (2005); Sony Corp v. Universal City Studios, Inc., 464 US 417, 435 (1984).  A party is liable for contributory infringement if, "with knowledge of the infringing activity," it "induces, causes, or materially contributes to the infringing conduct of another."  Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 3d 124, 154 (S.D.N.Y. 2009) (citing Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).  "The requisite knowledge for contributory infringement liability may be actual or constructive."  Id.  Furthermore, "willful blindness" to infringement may constitute knowledge and may be inferred if the defendant suspects criminal dealings and takes steps to avoid full or exact knowledge of the nature and extent of those dealings.  In re Aimster Copyright Litigation, 334 F.3d 643, 650 (7th Cir. 2003); see also US v. Prince, 214 F.3d 740, 760 (6th Cir. 2000) ("Willful blindness exists when a defendant, whose suspicion has been aroused, deliberately fails to make further inquiry.")

Vicarious infringement, on the other hand, does not require proof of knowledge. Broadcast Music, Inc. v. Meadowlake, Ltd., 754 F.3d 353, 355 (6th Cir. 2014).  Vicarious liability exists when two elements are present.  First, the defendant must possess the right and ability to supervise the infringing conduct.  Id. at 354.  Second, the defendant must have a direct financial interest in the infringing activities.  Id.

Here, Fox does not dispute that Mark Thomas produced and sold forgeries of Cheairs' work.  Rather, she argues that she is entitled to judgment as a matter of law because there is no

evidence that Helen Thomas was involved in or had actual knowledge of Mark Thomas' scheme. (ECF No. 260-1 at PageID 1715.)  Furthermore, Fox argues that Cheairs provides no evidence of willful blindness.  (Id. at PageID 1716.)

Cheairs disagrees.  She argues that Helen Thomas is liable for vicarious and contributory copyright infringement because she materially contributed to Mark Thomas' forgery scheme and took deliberate steps to avoid guilty knowledge of it.  (ECF No. 277 at PageID 2199.)  According to Cheairs, Helen Thomas materially contributed to her son's scheme by giving him her house as a place to display forged art and meet with potential buyers.  (Id. at PageID 2199-2200.)  She also contributed to the scheme by letting her son use her credit card to pay for printing services to create the forgeries, ads in the newspaper to promote his business, and a rental truck to transport the forgeries.  (Id. at 2200.)  Cheairs also argues that Helen Thomas had a direct financial interest in the forgery scheme as her son paid her at least $12,875 in proceeds from his art sales.  (Id.)  Finally, Cheairs argues that Helen Thomas' failure to inquire about the source of these funds establishes that she was, at best, willfully blind to her son's forgery scheme.  (Id. at PageID 2204.)

Cheairs has put forth sufficient evidence to create a genuine dispute of material fact as to Helen Thomas' liability for vicarious and contributory infringement.  As for the two elements of vicarious liability, first, Cheairs produced evidence that would permit a jury to find that Helen Thomas had the right and ability to supervise Mark Thomas' copyright infringement as it was taking place under her roof, and she was aware that he was storing paintings in the house.  (ECF No. 260-1 at PageID 1713.)

Furthermore, the undisputed facts show that Helen Thomas had a direct financial interest in her son's scheme.  Mark Thomas endorsed checks to her for $10,000 and $2,875.  (ECF No.

277 at PageID 2204.)  He also paid her $2,000 and endorsed multiple other checks to her.  (Id.)
Mark Thomas made these payments while he was selling art and meeting with prospective
buyers at 4628 Peppertree Lane.  A jury could conclude that this evidence shows that Helen
Thomas participated in her son's forgery scheme vicariously, even if she was ignorant of the
copyright infringement.  See Broadcast Music, Inc. v. JJ Squared Corp., 2013 WL 6837186, at
*3-4 (E.D.N.Y. 2013) (finding nightclub owner to be liable for vicarious infringement even
though he had no knowledge that songs being performed were copyrighted); Microsoft Corp. v.
Sellers, 411 F. Supp. 3d 913, 918 (E.D. Tenn. 2006) (finding that whether computer salvager
knew he was installing unlicensed software on rebuilt computers was "irrelevant" for
determining vicarious liability).

There is also a genuine dispute of material fact as to Helen Thomas' liability for
contributory infringement.  Based on the evidence cited, a jury could conclude that Helen
Thomas materially contributed to her son's forgery scheme by providing him with her house as a
place where he could display his forged paintings and meet with potential buyers.  The jury
could also conclude that she financially contributed to the scheme as Mark used her credit card to
pay for advertising, printer services, and transportation.  In short, the evidence would permit a
jury to conclude that Mark Thomas could not have effectuated his forgery scheme without his
mother's house and financial support.

Furthermore, even if a jury concluded that Helen Thomas did not have actual knowledge
that Mark was engaging in illegal copyright infringement, there is evidence that would permit a
jury to conclude that Helen Thomas had constructive knowledge, and/or was willfully blind to
the scheme.  As stated above, willful blindness exists when a defendant suspects illegality and
deliberately fails to make further inquiry.  The undisputed facts show that Helen Thomas knew

that her son was selling art out of her house, utilizing printer services, advertising his work in the Commercial Appeal, and renting a truck to move paintings. Yet, according to her testimony, Helen Thomas did not know why Mark paid her and endorsed checks over to her, or where these funds came from. The jury could conclude that a reasonable person in Helen's position would have at least inquired further about the source of the funds or why Mark was paying her. Thus, a jury could find that Helen was willfully blind to her son's copyright infringement.

The evidence pointed to by Cheairs creates a basis for a jury to find Helen Thomas liable for her son's copyright infringement. Therefore, there are genuine issues of fact material as to Helen Thomas' liability for vicarious and contributory infringement under the Copyright Act and VARA. As such, the Court **DENIES** Fox's Motion for Summary Judgment as to Cheairs' Copyright Act and VARA claims.

## B. Statutory Damages and Attorney's Fees

Under Section 412 of the Copyright Act, "no award of statutory damages or of attorney's fees. . . shall be made for (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." Section 412 also specifies that these registration prerequisites do not apply to "an action brought for a violation of the rights of the author under Section 106A(a)."

In her Motion, Fox argues that, even if Cheairs has a viable Copyright Act claim, she is not entitled to statutory damages or attorneys' fees because she failed to register her works with the Copyright Office before the alleged infringement, thus failing to meet the Copyright Act's registration requirements. (ECF No. 260-1 at PageID 1724-5.) Cheairs concedes that her

original artworks at issue were not registered before the alleged infringement but argues that she

nonetheless meets the Copyright Act registration requirements.  (ECF No. 277-1 at PageID 2225;

ECF No. 198 at PageID 1245.)

As noted above, the Copyright Act specifically states that there is no prerequisite of

registration to recover statutory damages and attorney's fees for violations of an artist's rights

under Section 106A(a).  Here, Cheairs seeks relief under Section 106A(a) to vindicate her rights

as a visual artist, such that her VARA claim is not subject to the registration requirements.

Therefore, Cheairs is entitled to recover statutory damages and attorney's fees under VARA

regardless of whether she meets the Copyright Act registration requirements.[2]

## III.     Preemption of State Law Claims

Fox next argues that Cheairs' claims under Tennessee law are preempted by the

Copyright Act and should therefore be dismissed.  (ECF No. 260-1 at PageID 1717.)  In her Fifth

Amended Complaint, Cheairs asserts state law claims for violations of the Tennessee Consumer

Protection Act ("TCPA"), tortious interference with prospective business relationships, common

law conspiracy, unjust enrichment, and libel.[3]  (ECF No. 198 at PageID 1249, 1252, 1253, 1255,

1256.)  According to Fox, the rights asserted by Cheairs in these state law claims are legally

equivalent to the exclusive rights provided by the Copyright Act.  (ECF No. 260-1 at PageID

1717.)  Because, as explained below, both requirements for preemption are satisfied here, the

---

[2] The Court declines to rule on whether Cheairs may recover damages and attorney's fees under
any other section of the Copyright Act.  If the ultimate finding in this case is that there is an
unsuccessful VARA claim under Section 106A(a), but a successful Copyright Act claim under a
different section, then the Court will revisit whether Cheairs is entitled to statutory damages and
attorney's fees.

[3] While not stated in her Motion, Fox clarifies in her Reply that she also seeks to dismiss
Cheairs' libel claim as preempted by the Copyright Act.  (ECF No. 278 at PageID 2339 n. 1.)

Court **GRANTS** Fox's Motion as to Cheairs state law claims, finding that these claims are preempted by the Copyright Act.

### A. Copyright Act Section 301

The Copyright Act expressly "preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in federal courts." Ritchie v. Williams, 395 F.3d 283, 285 (6th Cir. 2005). Section 301 of the Copyright Act subjects any state law to federal preemption if: (1) the law creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106"; and (2) the rights under such state law may be claimed in "works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by Sections 102 and 103." These requirements are often referred to as the "general scope" or "equivalency" requirement and the "subject matter requirement". Stromback v. New Line Cinema, 384 F.3d 283, 300 (6th Cir. 2004) (citing Nat'l Basketball Ass'n v. Motorola, Inc., 105. F.3d 841, 848 (2d Cir. 1997)).

Under Section 106 of the Copyright Act, the owner of copyrighted material has the exclusive rights to reproduce, distribute, perform, and distribute their work. To assess "equivalency," courts apply a functional test. Stromback, 384 F.3d at 301. "Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights." Id. If, however, "an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption." Id. The fact that a state right is either boarder or narrower than a Copyright Act right does not save it from preemption. Id. Rather, the existence of an extra element to prove a state law claim precludes preemption only where the

12

element changes the nature of the action such that it is qualitatively different from a copyright infringement claim.[4]  Id.; see also Hamlin v. Trans-Dapt of Cal., Inc., 584 F. Supp. 2d 1050, 1060 (M.D. Tenn. 2008) (To overcome preemption, a state law claim "must contain a meaningful additional element") (emphasis in original)).

The subject matter requirement supporting preemption is satisfied if a work fits within the general subject matter of Sections 102 and 103, regardless of whether the work qualifies for copyright protection.  Id.  The subject matter of copyright, "subsists . . . in original works of authorship fixed in any tangible medium . . . Works of authorship include . . . pictorial, graphic, and sculptural works."  17 U.S.C. § 102 (2018).  For the purposes of preemption, the scope of the Copyright Act's subject matter is broader than the scope of its protection.  Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir. 2001).

Here, Fox has established both the "equivalency" and "subject matter" requirements for preemption, as outlined below.

### B.  Equivalency

Fox first argues that all of Cheairs' state law claims seek to vindicate legal and equitable rights that are equivalent to one or more of the bundle of exclusive rights protected by the Copyright Act.  (ECF No. 260-1 at PageID 1719-20.)  Fox contends that Cheairs' state law

---

[4] Because the Copyright Act does not mention "extra element" or what qualifies as a qualitative difference, courts and commentators have criticized the extra element test as circular.  See In re Jackson, 972 F.3d 25, 44 n. 17 (2d Cir. 2020).  The Sixth Circuit also criticized the extra element test, stating, "The problem with this test is that it does not provide any real guidance to the courts.  There is always some difference between the state law and the Copyright Act, so a court that wants to avoid preemption can always find some difference, however small, that is the 'extra element' needed to avoid preemption.  The net result is that courts seem to first decide independently whether or not they think preemption should apply, and then label the result accordingly."  Ritchie v. Williams, 395 F.3d 283, 287 n.3 (6th Cir. 2005) (quoting Schuyler Moore, Straightening Out Copyright Preemption, 9 UCLA ENT. L. REV. 201, 204 (2002)).

claims all arise out of the copying and distribution of her work—conduct that falls squarely within the exclusive rights protected by Section 106 of the Copyright Act.  (ECF No. 278 at PageID 2239.)

Cheairs disagrees.  She argues that her state law claims include elements not covered by the Copyright Act and are qualitatively different from a copyright infringement claim.  (ECF No. 277 at Page ID 2206-07.)  Specifically, Cheairs argues that Mark Thomas' use of inferior physical materials in connection with his forgeries constitutes an "extra element" that is not covered by the Copyright Act.  (Id. at PageID 2206.)  Cheairs alleges that Mark Thomas' forgery scheme deceived consumers into thinking that they were buying original works by Cheairs when in fact they were being sold goods that were made of inferior materials and were not the artist's work.  (Id. at PageID 2210.)  According to Cheairs, Mark Thomas' use of inferior physical materials damaged her reputation as an artist and damaged the integrity of her body of work.  (Id. at PageID 2209.)  Cheairs contends that this deception of potential buyers goes beyond the mere act of copying and is not preempted by the Copyright Act.  (Id. at PageID 2210)

Despite her efforts in arguing to the contrary, Cheairs' state law claims fail to allege elements qualitatively different from the Copyright Act rights of reproduction, distribution, display, and attribution.[5]  Mark Thomas may have used inferior materials in service of his forgery scheme, but Cheairs' claims are fundamentally about the unauthorized reproduction and distribution of her work.  The state law claims regarding the use of inferior materials would not

_____

[5] Cheairs alleges five state law claims—TCPA, common law conspiracy, tortious interference with prospective business relationships, unjust enrichment, and libel.  All five claims rely on the theory that Mark Thomas used inferior materials to create his forgeries, and that these inferior materials deceived consumers and damaged Cheairs' reputation.  As all five claims allege the same extra element, the Court need not perform a separate preemption analysis for each cause of action.

exist without Mark Thomas' unauthorized copying and distribution.  These alleged inferior

materials may be an aspect of how Mark Thomas implemented his forgery scheme, but they do

not change the underlying nature of his alleged illegal conduct.  Cheairs' contentions—that Mark

and Helen Thomas participated in a scheme to reproduce and distribute forged works based on

Cheairs' copyrighted work—demonstrate that her claims are based solely on the exclusive rights

granted by the Copyright Act.

Cheairs does not change the nature of the action by labelling it as "deceptive" to potential

buyers.  Possible deception to consumers, by itself, is not enough to avoid preemption as every

copyright violation involves some degree of consumer confusion as to the identity of the author

of the copyrighted materials.  See Old South Home Co. v. Keystone Realty Group, Inc., 233 F.

Supp. 2d 734, 737 (M.D.N.C. 2002).  To avoid preemption, a state law claim based on deception

must at least contain an allegation of an affirmative act or misrepresentation in addition to

copying.  See id. at 737-38.  Here, Cheairs fails to allege acts of misrepresentation or deception

other than from the "mere act of copying".  See id. (quoting Compco Corp. v. Day-Brite

Lighting, Inc., 376 US 234, 239 (1964) (Harlan, J., concurring)).

In support of her position, Cheairs relies on two cases in which courts have held that a

state law claim of unfair and deceptive trade practices was not preempted.  In Innovative Medical

Products, Inc. v. Felmet, 472 F. Supp. 2d 678, 684 (M.D.N.C. 2006),  the court held that the

North Carolina Unfair and Deceptive Trade Practices Act (UDTPA) was not preempted by the

Copyright Act as the plaintiff's state law claim included an extra element that went beyond the

mere act of copying.  Similarly, in Third Party Verification, Inc. v. Signaturelink, Inc., 492 F.

Supp. 2d 1314, 1325 (M.D. Fla. 2007), the court held that the plaintiff's Florida Deceptive and

Unfair Trade Practices Act survived preemption.

15

In both of these cases, however, the plaintiffs alleged additional misconduct by the defendants that demonstrated that the nature of the state law causes of action were qualitatively different than the federal Copyright Act violations.  In <u>Felmet</u>, 472 F. Supp. 2d at 683-84, the plaintiff alleged that the defendants used knowledge gained in their past business relationship with the plaintiff to manufacture medical products that were identical to those made by the plaintiff, and then passed off this new product as their own.  The plaintiff's claims went beyond the "mere act of copying", by alleging that the defendants exploited a past confidential business relationship and "deliberately capitalized on the goodwill associated with plaintiff's product without first obtaining permission to do so. . . . deceiving customers into mistakenly purchasing defendant's substitute product."  <u>Id</u>. at 684.

In <u>Signaturelink</u>, 492 F. Supp. 2d at 1323, the plaintiff alleged that the defendants issued misleading advertisements that contained statements they knew or should have known to be false, would likely cause consumer confusion, and were made with reckless indifference to the plaintiff's economic interest.  The court held that, based on these facts, the plaintiff successfully alleged extra elements of consumer confusion and the deceptive conduct of a competitor.  <u>Id</u>. at 1325.

Unlike these cases, Cheairs alleged extra elements do not qualitatively change the nature of her claim.  She has not alleged any breach of a confidential relationship or any affirmative acts of misrepresentation different than the copyright violation itself.  There is no contention that Mark Thomas did anything but copy and sell her copyrighted material.  Accordingly, Cheairs fails to allege that Helen Thomas violated any right other than the exclusive rights guaranteed under Section 106 of the Copyright Act.

### C.  Subject Matter

As to the subject matter requirement, Fox argues that Cheairs' state law claims fall squarely within the scope of materials protected by the Copyright Act as the alleged forgeries involve art in a fixed medium.  (ECF No. 260-1 at ECF 1719.)  Cheairs responds by arguing that her state law claims arise from Mark Thomas' use of inferior physical materials, which damaged her reputation as an artist.  (ECF No. 277 at PageID 2207.)  Because the subject matter of Copyright Act does not extend to materials or physical components of a larger work, Cheairs argues that her state law claims are not preempted.  (Id.)

Once again, Cheairs' attempt to recharacterize this matter as one involving the use of inferior materials does not prevent preemption.  As discussed above, Mark Thomas may have used inferior materials in service of his forgery scheme, but this matter is fundamentally about the unauthorized reproduction and distribution of Cheairs' work.  Moreover, Cheairs' "parts of a whole" argument—that her claim arises from the various materials that make up a larger work rather than the larger work itself—is unavailing in the context of a copying case such as this one, as artistic works in tangible mediums necessarily involve the component physical materials that comprise the completed work.  By using Cheairs' "parts of a whole" logic, plaintiffs could routinely circumvent preemption by focusing on the quality of the individual materials defendants use to create their unauthorized copies.  Allowing Cheairs state law claims to survive under this theory would effectively moot the subject matter requirement in unauthorized copying cases.  Cheairs' state law claims fall within the subject matter of Section 106 of the Copyright Act.  As such, her state law claims meet both requirements for preemption under the Copyright Act.

Because Cheairs' state law claims allege rights that are equivalent to the exclusive rights within the general scope of copyright as specified by Section 106, her state law claims under the TCPA, common law conspiracy, tortious interference with prospective business relationships, unjust enrichment, and libel are preempted by the Copyright Act, and are **DISMISSED**.

## IV.   RICO Claim

Fox also seeks to dismiss Cheairs' RICO claim.  (ECF No. 260-1 at PageID 1723.)  Fox does not argue that there is no genuine dispute as to any material fact, such that she is entitled to summary judgment.  Rather, Fox argues that Cheairs fails to allege sufficient facts to sustain her RICO claim.  (Id. at PageID 1724.)  While Fox seeks to dismiss the RICO claim as part of her Motion for Summary Judgment, the Court construes Fox's Motion as arguing that Cheairs fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

As noted by Fox, "only the most egregious instances of criminal copyright infringement have ever been upheld as predicate offenses to racketeering charges under RICO."  Helios Int'l S.A.R.L. v. Cantomessa USA, Inc., 2013 WL 3943267, at *6 (S.D.N.Y. July 31, 2013) (quoting Melville B. Nimmer & David Nimmer, 1 Nimmer on Copyright § 3.04[B][3] (2013)).  Fox argues that Cheairs fails to allege sufficient facts that establish that Helen Thomas' conduct constitutes an "egregious instance of criminal copyright infringement."  (ECF No. 260-1 at PageID 1724.)

Cheairs does not respond directly to Fox's argument.  Instead, she argues that her RICO claim should not be dismissed as it relies on elements outside those of the Copyright Act, thus seeming to argue against preemption. (ECF No. 277 at PageID 2215.)  However, in evaluating the issue raised by Fox, it appears that Cheairs fails to plead any facts that could support a RICO claim, or point to evidence supporting the elements.  She fails to explain why Helen Thomas'

conduct, which, at best, constitutes vicarious and contributory liability, should be considered "one of the most egregious instances of criminal copyright infringement." There also appears to be an absence of other required RICO elements, such as predicate acts. Therefore, Cheairs' RICO claim fails to state a claim upon which relief can be granted and is therefore **DISMISSED**.

### V.   Fraudulent Transfer

Finally, Fox seeks to dismiss Cheairs' fraudulent transfer claim. However, the Court already ruled on this issue. On December 2, 2022, in an Order Granting Cheairs' Motion for Sanctions, the Court entered default in favor of Cheairs on her fraudulently transfer claim. (ECF No. 281 at PageID 2281.) Therefore, Fox's Motion for Summary Judgment is **DENIED** as to Cheairs' fraudulent transfer claim.

### CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's claims under the Copyright Act and VARA. The Court also **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's fraudulent transfer claim. However, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's remaining state law claims. The Court also **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's RICO claim. Accordingly, Plaintiff's claims for violations of the TCPA, RICO, tortious interference with prospective business relationships, unjust enrichment, common law conspiracy, and libel are **DISMISSED**.

**IT IS SO ORDERED**, this 1st day of February, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE